IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JIMMY LEE WEBB,<br>AIS #137198, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:13-CV-792-WHA |
| | ) | |
| BRANDON BOYD, et al, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on a complaint and amendments thereto filed by Jimmy Lee Webb ("Webb"), a state inmate, challenging actions related to his classification as a restricted offender in September of 2013. *Complaint - Doc. No. 1* at 2-3.  Webb names Brandon Boyd, his classification specialist, and Angie Baggett, Director of Classification for the Alabama Department of Corrections, as defendants.  Webb seeks monetary damages and injunctive relief for the alleged violations of his constitutional rights.

The defendants filed a special report, supplemental reports and supporting evidentiary materials addressing Webb's claims for relief.  In these documents, the defendants deny they violated Webb's constitutional rights during the classification process.

Upon receipt of the defendants' special reports, the court issued an order directing Webb to file a response to the reports, including affidavits, sworn statements or other evidentiary materials.  *Order of December 10, 2013 - Doc. No. 22* at 2.  This order specifically cautioned Webb that unless "**sufficient legal cause**" is shown within fifteen days of entry of this order "**why such action should not be undertaken**, . . . the court may at any time [after expiration of the time for his filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with law." *Id*. at 2-3.  Webb filed various responses, affidavits and declarations in response to the defendants' reports.

Pursuant to the December 10, 2013 order, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, including documents relevant to Webb's convictions, the sworn complaint, responses, affidavits and declarations filed by Webb, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff.

---

[1]Although stylistic changers were made to Rule 56 in December of 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to

> sufficient evidence regarding such issues of judgment to allow him to prevail
> on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted).  To proceed beyond the summary judgment stage, an inmate-plaintiff is

required to produce "sufficient [favorable] evidence" which would be admissible at trial

supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on

which the nonmoving party relies] is merely colorable . . . or is not significantly probative

. . . summary judgment may be granted."  *Anderson*, 477 U.S. at 249-250.  "A mere

'scintilla' of evidence supporting the opposing party's position will not suffice; there must

be enough of a showing that the [trier of fact] could reasonably find for that party.

*Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."

*Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations

based on subjective beliefs are likewise insufficient to create a genuine dispute of material

fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Holifield v.*

*Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . .,

in the absence of [admissible] supporting evidence, are insufficient to withstand summary

judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary

judgment appropriate where inmate produces nothing beyond "his own conclusory

allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553,

557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not

sufficient to oppose summary judgment. . . .”); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (“[C]onclusory allegations without specific supporting facts have no probative value.”).  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 (“[F]ailure of proof concerning an essential element of the nonmoving party’s case necessarily renders all other facts immaterial.”); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must “consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists.”  *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant.  *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary*

*of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. ZenithRadio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

    Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant

does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Webb v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Webb has failed to demonstrate a genuine dispute of material fact in order to preclude the entry of summary judgment in favor of the defendants.

### III. ABSOLUTE IMMUNITY

To the extent Webb sues the defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing and under the facts of this case, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## IV.  DISCUSSION

### A.  Relevant Facts

On October 16, 1983, Webb, a juvenile, and two other individuals attacked a female in her apartment in Auburn, Alabama. *Defendants' Exh. B to the Special Report - Doc. No. 19*-2 at 27. The facts indicate that Webb, armed with a handgun, and his codefendants, Earl F. Webb and Michael Combs, "pushed their way into [the victim's] apartment" at which time Webb "grabbed [the victim] and pushed her on to a bed. [Webb and his codefendants] demanded money and stated that they were going to have sex with her. [Webb threatened the victim with the handgun]. During the ensuing struggle, [the victim] screamed and was hit in the mouth by the subject (Jimmy Lee Webb) several times. . . . Earl F. Webb took his pocket-knife and cut the telephone cord. Both Jimmy and Earl Webb had their pants undone and their penises out. . . . [The victim] grabbed the subject's penis, pulling on it hard causing pain. This caused Jimmy Webb to strike [the victim] several more times until she let go of his penis. At about this time, Mike Combs shouted for them to leave and all three ran out the front door of [the victim's] apartment." *Defendants' Exh. B-1 to the Special Report - Doc. No. 19*-2 at 27.

On October 18, 1983, the Juvenile Court of Lee County, Alabama transferred various criminal cases arising from the above described incident to the Circuit Court of Lee County, Alabama for disposition, allowing that Webb be tried as an adult. *Plaintiff's Exh. B to the December 16, 2013 Response - Doc. No. 27* at 4-5. The juvenile court dismissed one case against Webb for first degree burglary, JU 83-61, due to the ambiguity of the complaint. *Id*. at 3-4. The dismissed burglary charge referenced Webb's unlawful entry into the victim's apartment with the intent to commit a theft of property. *Plaintiff's Exh. C to the December 16, 2013 Response - Doc. No. 27* at 6. After transfer of the cases to the circuit court, indictments were issued charging Webb with two counts of first degree burglary, CC No. 84-014 and CC No. 84-016, one count of first degree attempted rape, CC No. 84-013, and two counts of first degree robbery, CC No. 84-012 and CC No. 84-015. *Defendants' Exh. B-1 to the Special Report - Doc. No. 19*-2 at 28. The record demonstrates that the burglary charges encompassed Webb's entry into the victim's apartment with the intent to commit a robbery and rape. *Id*.

On January 1, 1984, the trial court denied Webb's application for Youthful Offender status and arraigned him as an adult on each of the five charged offenses. *Id*. at 27. On February 9, 1984, Webb entered a guilty plea to first degree burglary in case CC No. 84-016 and the court nol prossed the remaining charges on motion of the State. *Id*. at 27-28. Those convictions did not end Webb's criminal activities. Webb is currently incarcerated on a twenty-year sentence for a second degree assault conviction imposed upon him in 1997 by the Circuit Court of St. Clair County, Alabama. *Id*. at 14. This conviction

stemmed from Webb stabbing a correctional officer at the St. Clair Correctional Facility. Webb has also accumulated an extensive disciplinary record while in prison. *Id*. at 15-21.

## B.  False Information

Webb complains that the defendants relied on false information regarding the sexual nature of his 1984 burglary offense to classify him as a restricted offender and deny him access to minimum-out custody status. *Complaint - Doc No. 1* at 4. Specifically, Webb maintains that because the juvenile court dismissed a burglary charge, JU 83-671, and did not refer this particular charge to the Circuit Court he has no burglary conviction with sexual overtones. *Id*.

The defendants deny this allegation and assert that the information utilized in the classification process is true and correct. Specifically, the defendants maintain that the Central Restriction Review Committee ("CRRC"),[2] in accordance with applicable classification criteria and due to Webb's convictions, including the 1984 conviction for first degree burglary, the circumstances of which involved his assault on and attempted rape of the victim, and the 1997 conviction for assault on a correctional officer, determined Webb should be classified as a restricted offender and remain in medium custody. *Defendants' Exh. B-1 to the Special Report - Doc. No. 19-2* at 1-2; *Defendants' Exh. B-2 to the Special Report - Doc. No. 19-3* at 10.

---

[2]The CRRC is comprised of the Associate Commissioner of Operations, the Associate Commissioner of Plans and Programs, and/or the Director or Assistant Director of Classification.  Classification Specialists, are not members of the CRRC and do not play an intricate role in the determination of a "Restricted" offender; rather, they merely make a recommendation to the CRRC regarding classification.

The initial classification criteria for restricted offender status required that "inmates whose offenses (past or present) indicate that a sex offense did occur in the commission of an offense, but for which there was no prosecution due to plea bargain or other considerations[,]" be classified as a restricted offender.  *Defendants' Exh. B-1 to the Special Report - Doc. No. 19-2* at 6.  In addition, the classification criteria permitted, on a case-by-case basis, restricted offender status for "inmates with arrest(s) for a sexual offense(s) for which there is no disposition, but for which we have details will be considered on a case-by-case basis[,]" and inmates whose offenses are "of a reprehensible nature[.]"  *Id*. at 6-7.  A revision to the classification criteria, which became effective on October 15, 2009 and removed several offenses from eligibility for restricted offender status, continued, however, to delineate such status for those inmates convicted of violent crimes or crimes involving a sex offense.  *Id*. at 9.

In response to Webb's false information claim, defendant Baggett states that:

> Inmate Webb was originally sentenced to ADOC custody on a twenty-two (22) year sentence for Burglary I on February 9, 1984.  Webb has completed that sentence and is now serving the remainder of a consecutive twenty (20) year sentence for Assault II that he received on September 2, 1997 (stabbed a correctional officer while incarcerated at St. Clair Correctional Facility).  He has also completed the prison portion of a consecutive (18) month split sentence for Theft of Property I that he received on November 5, 2008 (stole $10,000 worth of copper wire while on parole).
>
> Inmate Webb was originally deemed to be restricted in August of 2004 due to the nature of his Burglary I conviction.  According to a *Report of Investigation (PSI)* dated February 24, 1984, Webb and his two (2) co-defendants forced their way into a female victim's apartment.  One co-defendant was armed with a knife and Webb was armed with a handgun.  Webb and his codefendants demanded money from the victim and told her they were going to have sex with her.  Webb and one co-defendant attempted

to rape the victim, but she was able to prevent the attack by pulling on Webb's penis hard enough to inflict pain.  Webb then struck the victim several times until she let go.  The third co-defendant then shouted for them to leave the apartment.  All three (3) ran out of the front door.  Webb was thus restricted in accordance with item one of the guidelines in place at that time.  Item one provided for the restriction to apply in cases where there is indication that a sex offense did occur in the commission of an offense, but for which there was no prosecution due to a plea bargain or other considerations.  Webb was originally charged with Attempted Rape I in this case, which was later Nolle Prossed in a plea bargain to the Burglary I. Inmate Webb was clearly deemed to be restricted based on the guidelines in place at that time.

Subsequent to policy changes in 2009, inmate Webb was afforded a review by the CRRC in May of 2012.  The Associate Commissioner of Operations and the Associate Commissioner of Programs both voted that Webb remain restricted.  [*Defendants' Exhibit C to the Special Report - Doc. No. 19-3* at 7.]  Both cited item nine (9) of the current guidelines as the reason for their decision.  [*Id.*]  Item nine (9) provides for the restriction on a case-by-case basis when offenses may or may not result in death but are of such a violent nature that the restriction may be warranted.  To date, inmate Webb remains restricted in accordance with ADOC classification policy.

Restricted inmates are eligible for no less than Minimum-In custody under current policy.  Inmate Webb has been recommended for a custody reduction from Medium to Minimum-In at his annual classification review by Brandon Boyd, Classification Specialist at Bullock Correctional Facility, in 2011, 2012 and 2013.  These reviews were forwarded to the Central Review Board (CRB) for final decisions.  In June of 2011, Webb was denied for custody reduction due to not being within three (3) years of his February 2015 parole consideration date as required by [applicable] criteria.  He was again denied in September of 2012 due to lack of institutional support for the custody reduction.  Webb was also . . . denied on October 2, 2013 due to his violent history in and out of prison.  He currently remains classified in Medium custody.

In conclusion, I see no indication that inmate Webb has been classified based on the use of false information.  The crime details for the Burglary I were taken from a *Preliminary Report of Investigation (PSI)* prepared in the case by the Alabama Board of Pardons and Paroles.  PSIs are official court documents that are routinely used by ADOC to obtain crime details, arrest histories and other information pertinent to an inmate and his/her classification.

Webb has been deemed a restricted offender and is classified in accordance with all current ADOC classification policies and guidelines.

*Defendants' Exhibit B-1 to the Special Report - Doc. No. 19-2* at 2-3.

In addition, as to Webb's false information claim, defendant Boyd responds as follows:

. . . . All information obtained from criminal justice agencies for the purpose of classification of [Webb] is true and accurate. The primary responsibility of the Classification Specialist is to ensure that inmates assigned to their caseload are classified in compliance with the procedures and criteria set forth in the Classification Manual. The definition of Classification according to Alabama Department of Corrections Classification Manual section 1.5.1 pg 2 is: Classification is the process of categorizing an inmate by custody level and program needs using such means as personal interviews, tests and other scoring instruments, behavior reports, Pre-Sentence Investigations (PSI), court documents, information from other criminal justice agencies and computer generated research. As it pertains to Inmate Webb, inmates with violent offenses are evaluated to determine if their classifications meet the requirement for "Restricted Status." If the ADOC Central Restriction Review Board determines the inmate should be placed in "Restrictive Status" there will be a "R" suffix attached to the inmate's AIS number for identification purposes.

On 4/30/12, Inmate Webb requested removal from Restricted Status. Inmate Webb's request was forwarded to the Central Restriction Review Committee, also known as the CRRC, for review. Inmate Webb had been placed on Restrictive Status per Classification Manual section 5.4.3.1.1: The following category of inmates will require review for the "R" suffix: 1 - Inmates whose record (past or present) indicate that a sex offense did occur in the commission of an offense, an indictment for the sex offense was returned, but for which there was no prosecution due to plea bargaining or other considerations. . . . Inmate Webb's case for Burglary I CC1984-000016 contains sexual overtones. Inmate Webb's request was denied by CRRC.

*Defendants' Exh. A to the Special Report - Doc. No. 19-1* at 1-2.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary

and capricious treatment violative of the Constitution.  The court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*.  In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole.  *Slocum*, 678 F.2d at 941.  The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors.  Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information.  We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration.  *Id.* at 942.  We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files.  *Id*.  In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender.  As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations.  *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442.  *Slocum* controls the disposition of the instant false information claim.

The defendants maintain that the information utilized in the classification process is true and that reliance on this information to classify Webb as a restricted offender did not infringe on any of his constitutional rights.  Of specific importance, there is no admission by the defendants that the information used in determining Webb's classification status is false, incorrect or erroneous.  Webb has failed to come forward with any evidence which

indicates that the defendants knowingly used false information during the classification process. Moreover, Webb's conclusory assertion regarding the use of false information does nothing more than raise the possibility that information in his records may be false and this mere possibility fails to provide a basis for relief. *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

The record in this case establishes that Webb has failed to establish a genuine dispute about whether the defendants relied on ***admittedly*** false information in either their decision to classify Webb as a restricted offender or the determination that he should remain in medium custody. Consequently, Webb is entitled to no relief as a matter of law and entry of summary judgment in favor of the defendants is appropriate.

### C. Due Process

1. <u>Assigned Custody Classification</u>. To the extent Webb argues he is entitled to placement in a more favorable custody classification, this claim provides no basis for relief. The law is well settled that

> there are only two instances when a prisoner may be deprived of a due process liberty interest under § 1983: The first is when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. The second situation is when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999) (quotation omitted) (citing *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

*Morales v. Chertoff*, 212 F. App'x 888, 890 (11th Cir. 2006).  Webb's claims fail to implicate either of these situations because his assigned custody classification is not "so severe that it essentially exceeds the sentence imposed by the court," and the administrative regulations governing classification "do not bestow a benefit vis-a-vis the custody classification, the deprivation of which would result in an 'atypical and significant hardship' on [Webb].  *See Kirby*, 195 F.3d at 1290-91; *see also Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir.1994) (in the context of a claim based on a custody classification, holding that the U.S. Constitution affords no liberty interest in a prisoners custody classification); *cf. Meachum v. Fano*, 427 U.S. 215, 224-26, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (holding that a prisoner does not have a liberty interest in an assignment to any particular prison, regardless of whether the conditions of one prison are 'much more disagreeable' than another)."  *Morales*, 212 F. App'x at 890.

    2.  <u>Alleged Lack of Custody Review</u>.  Webb argues that defendant Boyd deprived him due process during the classification process by failing to conduct semi-annual custody reviews in 2013.  *Amendment to Complaint - Doc. No.* 17 at 1.  Webb alleges that the reviews did not occur because he did not receive notice of the reviews in the mail.  *Id.* Defendant Boyd adamantly denies these allegations and addresses such claims as follows:

>     I am in receipt of Inmate Jimmy Webb's complaint regarding (i) failed to undertake a review of the plaintiff's file for the semi-annual review due this year [2013] in violation of the directives set forth in the classification manual:  I review Inmate Webb's file twice a year to see if he is eligible for a change in his custody and/or security level.  I reviewed Inmate Webb's file during his semi-annual review on 3/1/2013.  A review of his file revealed that Inmate Webb had received a major disciplinary on 1/17/2013 for the rule

violation of Sexual Offense (Non-Forcible)/Soliciting.  Because he did not have a 90 day clear record and in accordance with the guidelines in the Classification Manual, Inmate Webb was ineligible for a custody reduction. Inmate Webb was sent a copy of his semi-annual review on 3/5/2013.

In response to Inmate Webb's complaint of (ii) failed to submit each of his "in house" reviews of the plaintiff's custody classification to the central review board for additional review/disposition: Every annual custody review classification is forwarded to the Central Review Board for disposition. Inmate Webb's file was reviewed by me on 9/20/13 at the Institutional level. I recommended min-in Custody. The Institutional Classification Review Committee noted their recommendations on the progress review form. The Warden dissented on this recommendation. I submitted this progress review, with the Institutional Classification Committee's recommendation, to the Central Review Board for disposition. Inmate Webb was given a copy of the Institutional Classification Review Committee's recommendation on 9/23/13. On 10/2/13, the Central Review Board ruled that Inmate Webb will remain in medium custody/security level IV.  The progress review with the Central Review Board's final [disposition] was forwarded to Inmate Webb via the institutional mail. I never received any correspondence from Inmate Webb that he did not receive his final copy.

In response to Inmate Webb's claim (iii) failed to provide copies of each annual review to the plaintiff:  Again, All inmates receive a copy of the Institutional Classification recommendation and a copy of the Central Review Board's final decision on the recommendation.

*Defendants' Exh. 1A to the Supplemental Special Report - Doc. No. 33* at 1-2.  The undisputed records compiled contemporaneously during the classification process likewise demonstrate that defendant Boyd conducted the requisite semi-annual reviews in 2013 with respect to Webb's custody classification.  *Id*. at 4-5.  These documents also indicate that a copy of each was sent to Boyd.  *Id*.  The conclusory allegations presented by Webb to the contrary have no probative value and are insufficient to defeat summary judgment.  In addition, as previously noted, a state inmate has no constitutionally protected interest in his classification status.  *Sandin*, 515 U.S. at 484; *Morales*, 212 F. App'x at 890; *Slezak*, 21

F.3d at 594.  Consequently, correctional officials may assign Webb to any classification level without implicating the protections of due process.  For the foregoing reasons, Webb is due no relief on his claims challenging the constitutionality of the procedures undertaken in determining his classification level.

Insofar as Webb contends that the decision to classify him as a restricted offender was arbitrary and unreasonable, he is entitled to no relief.  State officials may not deny or restrict access to less restrictive custody classifications for arbitrary or capricious reasons. *Hendking v. Smith*, 781 F.2d 850, 852 (11th Cir. 1986) (classification system contains no inherent constitutional invalidity, but becomes constitutionally offensive only if "the regulation is administered maliciously or in bad faith.").  Consideration of the details surrounding an inmate's criminal convictions when determining the inmate's custody classification, however, does not implicate the Constitution as it is rationally related to the legitimate state interest of ensuring that only those inmates best suited for lower custody classifications are so placed.  *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988) (holding that the denial of eligibility for incentive time benefits to inmate who received sentences of over 10 years "is rationally related to the legitimate purpose of preventing the early release of serious offenders [and] does not violate the . . . due process clause").

Prison officials' reliance on all of the facts underlying Webb's convictions to classify him as a restricted offender and deny him a lower security and/or custody level is not violative of the Constitution as the circumstances underlying the crimes may

legitimately be used by prison authorities to determine the security and classification status of prisoners. *Hendking*, 781 F.2d at 852. Webb's disagreement with prison officials' determination that he meets the ADOC's current classification criteria for restricted offender does not make the review committee's decision arbitrary or capricious, and Webb has presented no evidence indicating that the officials responsible for his classification engaged in arbitrary or capricious actions by not recommending him for removal from restricted offender status. *See Thornton*, 852 F.2d at 527. The court, therefore, concludes that the nature and circumstances of the crimes for which Webb stands convicted meet the criteria for restricted offender status and his classification as a restricted offender is "not arbitrary and capricious, but reasonable and appropriate." *Hendking*, 781 F.2d at 852.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that **on or before May 26, 2016,** the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the

Magistrate Judge's findings and recommendations in accordance with the provisions of 28

U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of

legal and factual issues covered in the Recommendation and waives the right of the party

to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions accepted or adopted by the District Court except upon grounds of plain error

or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-

1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v.*

*City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

      Done this 12th day of May, 2016

                    /s/Charles S. Coody

                  CHARLES S. COODY

                  UNITED STATES MAGISTRATE JUDGE